AO 91 (Rev. 11/11) Criminal Complaint # 14-124

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 14-1293-M |
| ROBERT MADRAK and THOMAS HANDZUS | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **November 18, 2014** in the county of **Montgomery** in the **Eastern** District of **Pennsylvania**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841(a)(1),(b)(1)(B) and 18 U.S.C. Section 2 | The defendants knowingly and intentionally possessed with the intent to distribute, and aided and abetted the possession with intent to distribute of, 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Steve Catherman, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: December 16, 2014

_____
*Judge's signature*

City and state: Philadelphia, PA

David R. Strawbridge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION**

Your affiant, Task Force Officer Steve Catherman, U.S. Drug Enforcement Administration (DEA), United States Department of Justice, being duly sworn, states as follows:

**INTRODUCTION**

1.  I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2.  I am currently a Task Force Officer with the Drug Enforcement Administration ("DEA). I have worked in this capacity for one year. In total, I have worked in law enforcement for eight years, which includes serving as a police officer in the Tullytown Borough Police Department (2006-2008) and the Abington Township Police Department (2008-present). In my career, I have recruited, developed, and utilized registered confidential sources and reliable sources which have provided drug information. I have participated in over 300 controlled purchases of narcotics. I have also made several undercover purchases of narcotics. In summary, I have purchased methamphetamine, MDMA, marijuana, prescription pills, cocaine and heroin. I have authored multiple search/seizure warrants and arrest warrants. I have participated in the execution of these warrants and debriefed individuals who are involved in drug trafficking. I am familiar with the organizational structure of drug trafficking organizations and their methods, including the language and code words they use, the prices of drugs and packaging of materials, and money generated from these activities. I have participated in over 10 investigations utilizing court-authorized interception of wire and electronic communications, and have listened to over 50,000 intercepted communications involving drug activity. As a part

1

of my official duties with the DEA, I investigate criminal violations of the federal controlled substances laws, including, but not limited to, Title 21, United States Code, §§ 841(a)(1), 843(b), 846, 848, 853, and 860.

3. Based on my training and experience, I am familiar with the ways in which drug dealers conduct their drug-related business, including, but not limited to their (a) methods of distributing narcotics; (b) methods of distributing drug proceeds; (c) use of telephone communication devices, internet electronic mail and digital display paging devices; (d) use of numerical codes and code words to identify themselves, the nature of the communication and to conduct their drug-related transactions; and (e) common practice of registering for and obtaining these communication devices under false names, or names of relatives and/or friends to avoid financial responsibilities and tracking of criminal activities by law enforcement entities. I am familiar with and have participated in all of the normal methods of investigation, including, but not limited to, visual surveillance, the questioning of witnesses, and the use of informants, undercover operations, pen register, trap and trace devices and wire communication intercepts.

## PURPOSE

4. This Affidavit is made in support of Arrest Warrants for ROBERT MADRAK ("MADRAK") and THOMAS HANDZUS ("HANDZUS") for their roles in distributing eight ounces of methamphetamine to me on November 18, 2014.

## PROBABLE CAUSE

5. I have investigated MADRAK since April of 2014. The investigation has included your affiant making two prior undercover purchases of methamphetamine from MADRAK.

6. Prior to November 18th, I made arrangements to purchase eight ounces of

2

methamphetamine from MADRAK for $20,000. On Tuesday, November 18, 2014, at 6:40 p.m., I met MADRAK at the Home Depot Parking Lot, located 2250 Easton Road, in Willow Grove, Pennsylvanie, to purchase the methamphetamine.

7. On November 18th, MADRAK arrived driving a grey Oldsmobile, with PA tag # JKC-2931. I entered the passenger seat of that car and MADRAK asked if everything was OK? I told him yeah, but "the girls" (meaning the methamphetamine and the $20,000) cannot be in the same place at once. MADRAK said "fair enough." He asked me if I wanted to still take a look? I said I did.

8. MADRAK told me to look behind his car, in the bushes along the fence line of the parking lot. He said "it" (meaning the methamphetamine) will be in a white Styrofoam cup. We both got out of MADRAK's car, and MADRAK opened the hood to give your affiant cover. In the area where MADRAK described along the fence line, I found a white Styrofoam cup with a piece of red tape over the lid. I looked in the cup by removing the tape, saw what I recognized to be methamphetamine, put the cup back in its original location, and returned to MADRAK. We re-entered his car, and MADRAK picked up his cellphone and made a phone call.

9. MADRAK told the person he was speaking to on the phone that everything was good, and to take his parking spot when he (MADRAK) pulled out. MADRAK also said to watch over "the girl" when MADRAK was gone. At this point, MADRAK pulled out of his parking spot and I asked him who he just talked to? MADRAK said "his man," meaning the person who would watch over the methamphetamine. I asked if he could trust that guy, and MADRAK said he did. MADRAK confided that he was worried that your affiant was going to set him up, and I told MADRAK I wasn't that kind of guy.

10. We then drove to my car to collect the money; I told MADRAK to park in the

3

rear parking lot of Miller's Ale House, which is located on the 2300 block of Easton Road. I got out of MADRAK'S car, and gave a signal to the back-up officers. One arrest team came and arrested MADRAK in his vehicle. A second arrest team arrested HANDZUS in his vehicle. HANDZUS was the person guarding the methamphetamine, and the arrest team saw HANDZUS pull into MADRAK'S parking spot as soon as MADRAK pulled out. HANDZUS was driving a Toyota Highlander with PA Tag # EBD-4126, and he was the only person in that vehicle.

11.     Special Agent Randy Sampson recovered the white Styrofoam cup with eight ounces of methamphetamine. Upper Moreland Detective John Schramm did a NIK test on the substance and determined it is methamphetamine.

12.     In searches incident to the arrest of MADRAK and HANDZUS, police found cellphones in their front jacket pockets. MADRAK had a black Cricket LG flip-phone. HANDZUS had a black Cricket ZTE touch-screen phone. On November 19, 2014, United States Magistrate Judge Carol S. Wells signed search warrants for both cellphones. A search of those phones revealed call history logs showing that MADRAK used his cellphone to call HANDZUS on his cellphone during the aforementioned drug deal (i.e., MADRAK told HANDZUS to guard the methamphetamine after he drove away).

13.     After being read his *Miranda* rights and waiving them, HANDZUS gave an oral statement that he knew MADRAK because he rented a property that MADRAK owned on Roxborough Avenue in Philadelphia. HANDZUS said he was behind on his rent, and he agreed to assist MADRAK on November 18th by "watching his back" as MADRAK sold the methamphetamine. HANDZUS said he done this for MADRAK before and, on occasion, he also delivered packages for MADRAK.

## CONCLUSION

14. Based on the above, there is probable cause to believe that MADRAK and HANDZUS violated Title 21, United States Code, Sections 841(a)(1),(b)(1)(B), and Title 18, United States Code, Section 2. Accordingly, your affiant requests that the Court issue the attached arrest warrants for both men.

Steve Catherman
Task Force Officer
Drug Enforcement Administration

Sworn and subscribed before me
this 16th day of December 2014:

BY THE COURT:

HONORABLE DAVID R. STRAWBRIDGE
*United States Magistrate Judge*

5